J-S79042-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.S.D., Jr., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.S.D., FATHER | : | No. 1378 MDA 2018 |

Appeal from the Order Entered July 19, 2018
in the Court of Common Pleas of York County
Orphans' Court at No(s):  2018-0012a

BEFORE:  SHOGAN, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED APRIL 16, 2019**

J.S.D. ("Father") appeals from the Order granting the Petition filed by J.F. and C.F. ("Petitioners"), a married couple, seeking to involuntarily terminate Father's parental rights to his minor child, J.S.D., Jr. ("Child"), a male born in January 2017, pursuant to the Adoption Act, 23 Pa.C.S.A. § 2511(a)(1), (5), and (b), so that Petitioners may adopt Child.  We affirm.

On April 12, 2018, Petitioners filed a Petition for Adoption and a Petition for the involuntary termination of Father's parental rights to Child ("ITPR

Petition").[1]  On July 16, 2018, the Orphans' Court conducted a hearing[2] on the ITPR Petition, at which Petitioners were present with their counsel.  Child's legal counsel, Jennifer Galloway, Esquire ("Attorney Galloway"), was present on Child's behalf.[3]  Father, who was incarcerated at Dauphin County prison, was present with his court-appointed counsel.

---

[1] The Petition also sought to terminate M.L.'s ("Mother") parental rights to Child.  On July 19, 2018, Mother filed a Consent to Adoption, and Petitioners filed a Petition to Confirm Consent to Adoption.  Mother is not a party to the instant appeal.

[2] At a previously-scheduled hearing on June 25, 2018, Mother indicated that she would consent to Child's adoption.  The Orphans' Court thereafter continued the hearing.

[3] Although Attorney Galloway identifies herself as Child's court-appointed Guardian *ad litem* ("GAL") in her appellate brief, from the record, it appears that Attorney Galloway served as Child's legal counsel during the hearing. ***See generally In re Adoption of L.B.M.***, 161 A.3d 172, 179-80 (Pa. 2017) (plurality) (requiring the appointment of separate legal counsel, in addition to a GAL in contested involuntary termination proceedings).  However, a majority of the ***L.B.M.*** Court concluded that counsel may serve both as the GAL, representing the child's best interests, and as the child's counsel, representing the child's legal interests, as long as there is no conflict between the child's legal and best interests.  ***Id.*** at 183-93; ***see also In re D.L.B.***, 166 A.3d 322, 329 (Pa. Super. 2017) (stating that "separate representation would be required only if the child's best interest and legal interests were somehow in conflict.").  Here, Child was only one-and-a-half years old at the time of the hearing, and therefore unable to express his preferred outcome.  ***See In re T.S.***, 192 A.3d 1030, 1092 (Pa. 2018) (concluding that "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests.").  Accordingly, we conclude that there is no conflict between Child's legal interests and best interests, and the dictates of ***L.B.M.*** are satisfied.

- 2 -

In its Findings of Fact, the Orphans' Court set forth the factual background and procedural history of this appeal as follows:

1. [] Child was born in January 2017, and is one[-]and[-]a[-]half (1½) years old.

2. []Father has been incarcerated during [] Child's lifetime as follows:[FN1]

> a. Sometime prior to January 1, 2017 to January 19, 2017. …
>
> b. Sometime in July 2017 to September 11, 2017. …
>
> c. April 12, 2018 to current. …
>
> [FN1] The [c]ourt takes judicial notice of [] [F]ather's criminal record from the Common Pleas Courts Docket Sheets on the Unified Judicial System website.

3. On August 9, 2017, the Court of Common Pleas of the 41st Judicial District of Pennsylvania, Perry County Branch, the Honorable Kenneth A. Mummah presiding, entered an Order [granting L.D. ("Paternal Grandmother") sole legal and physical custody of Child.]

4. [] Father had only one possible contact with [] [C]hild within the six months prior to the filing of the [ITPR Petition], that being[] a several[-]hour visit with [] [C]hild at the home of Paternal Grandmother.[FN2]

> [FN2] Throughout [] [F]ather's testimony, he was unable to provide dates credibly. For instance, he initially claimed he had custody of [] Child until mid-October 2017 and had last seen [] Child in 2018, the latter testimony being at complete variance with the testimony of the [P]etitioner, whose testimony the [c]ourt finds to be credible. After being confronted with the conflict during cross-examination, [] [F]ather modified his testimony that such contact was sometime after his release from incarceration, which would have been on September 11, 2017, but prior to

Thanksgiving, November 23, 2017, without further specificity.

5. Paternal Grandmother had sole custody of [] Child from July 2017[,] to January 12, 201[8]. On December 27, 2017, Paternal Grandmother and Petitioners initiated the process of transferring custody of [] Child to the Petitioners, finalizing such transfer on January 12, 2018, by Paternal Grandmother executing guardianship papers.

6. [] Father claims that[,] upon his incarceration in July 2017, he provided Paternal Grandmother with access to his bank account, containing approximately $16,000.00, for her use to support [] Child, which funds [] Father claims were misused by Paternal Grandmother.

7. [] Father has no current income or any appreciable assets.

8. [] Father claims that he was unaware that Paternal Grandmother transferred custody of [] Child until being served with a copy of the [ITPR Petition].

9. At all times relevant, [] Father was able to contact Paternal Grandmother; [*sic*] knowing her address and telephone number.

10. [] Father claims Paternal Grandmother was unwilling to allow him to have contact with [] Child after the entry of Judge Mummah's Order dated August 9, 2017.[FN3]

    [FN3] Apparently, other than the several[-]hour visit.

11. []Father considered contesting Judge Mummah's Order dated August 9, 2017, but ultimately concluded that he could not afford to do so.

12. [] Father contends his recent criminal record is the product of a substance abuse problem[;] he has participated in prison treatment programs in an effort to cure this problem[;] and he has been clean for 7-8 months.

13. In contrast, [Father pled guilty to Use/Possession of Drug Paraphernalia on June 11, 2018].

- 4 -

14. The [c]ourt finds that [] Father continues to suffer from his substance abuse problem and has not been able to reach a state of true recovery from its ill effects at this time.

15. [] Father contends that he will be released from incarceration sometime in September 2018.

16. In contrast, [] Father's criminal record reflects that:

a) As noted above, he pled guilty to the Use/Possession of Drug Paraphernalia with a penalty being assessed. … The penalty assessed is unknown, but was filed of record on the same day as the hearing, July 16, 2018.

b) On August 20, 2018, a Revocation Hearing [wa]s scheduled to be conducted by the Court of Common Pleas of Dauphin County, the Honorable William T. Tully presiding; presumably to determine whether [] Father [would admit] to violating his probation. …

Orphans' Court Order, 7/19/18, at 1-5 (footnotes in original).

The Orphans' Court granted the [ITPR Petition] on July 19, 2018. Father timely filed a Notice of Appeal and Concise Statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Father raises the following issue for our review:

I. Whether the [Orphans' C]ourt erred as a matter of law and abused its discretion by granting the request of Petitioners to terminate [Father's] parental rights when Petitioners failed to present clear and convincing evidence under 23 Pa.C.S.A. [§] 2511(a)(1) and (5)?

Father's Brief at 5.[4]

Father argues that there was insufficient evidence presented at the termination hearing to show that the requirements of section 2511(a)(1) and (5) were met by clear and convincing evidence. *See id.* at 12-19. Father argues that he provided Paternal Grandmother almost $16,000.00 for Child's care. *Id.* at 15. Father acknowledges that "he was unable to stay in contact with [Child,]" but asserts that Paternal Grandmother prevented him from having any contact with Child, including telephone calls. *Id.* at 16. Father urges that the trial court failed to give sufficient weight to Child's best interests and the bond that may have existed between Child and Father. *Id.* at 18-19.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if

---

[4] While Father stated his issue somewhat differently in his Concise Statement, we find it sufficiently preserved for this Court's review. We additionally note that Father waived any challenge to the sufficiency of the evidence to support the termination of his parental rights under section 2511(b), as he did not challenge section 2511(b) in either his Concise Statement or the Statement of Questions Involved portion of his brief. *See Krebs v. United Ref. Co. of Pa.*, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both his concise statement of errors complained of on appeal and the statement of questions involved in his brief on appeal). Nevertheless, we will consider the sufficiency of the evidence supporting termination under section 2511(b), as Father discussed section 2511(b) in the Argument section of his brief, and the Orphans' Court considered Child's best interest in its Order.

they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

[U]nlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-27 (Pa. 2012) (internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). "The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation omitted).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a), along with consideration of subsection 2511(b). *See In re B.L.W.*, 843 A.2d 380,

384 (Pa. Super. 2004) (*en banc*). Here, we will consider subsections 2511(a)(1) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

\* \* \*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(1), (b).

To terminate parental rights pursuant to Section 2511(a)(1), the person or agency seeking termination must demonstrate through clear and convincing evidence that, for a period of at least six months prior to the filing of the petition, the parent's conduct demonstrates a settled purpose to relinquish parental rights or that the parent has refused or failed to perform

parental duties. *In Re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003).

> Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1988).

Additionally, in regard to incarceration and preservation of parental rights, we have stated the following:

> [I]ncarceration of a parent does not, in itself, provide sufficient grounds for termination of parental rights; however, an incarcerated parent's responsibilities are not tolled during his incarceration. … [P]arental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his ability, even in difficult circumstances.

*In the Interest of C.S.*, 761 A.2d 1197, 1201 (Pa. Super. 2000) (citations omitted). "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental duties while others provide the child with his or her physical and emotional needs." *In re K.Z.S.*, 946 A.2d 753, 759 (Pa. Super. 2008) (citations omitted).

The focus in terminating parental rights under section 2511(a) is on the parent, but it is on the child pursuant to section 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.[A.] § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [533 Pa. 115, 121, 620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." *In re K.Z.S.*, 946 A.2d 753, 762 (Pa. Super. 2008).

Further,

> concluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent …. Nor

- 10 -

are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See In re K.Z.S.*, 946 A.2d at 763 (affirming involuntary termination of parental rights, despite existence of some bond, where placement with mother would be contrary to child's best interests). "[A] parent's basic constitutional right to the custody and rearing of his or her child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d at 856 (internal citations omitted).

In its Order, the Orphans' Court set forth the following Conclusions of Law regarding its decision to terminate Father's parental rights pursuant to subsection 2511(a)(1):

1. Other than a single visit, [] Father has had no contact with [] Child; both during and for periods he was released from incarceration[,] for a period in excess of six (6) months.

2. [] Father did not exercise reasonable firmness in resisting obstacles created by his incarceration and Judge Mummah's Order dated August 9, 2017, nor did he employ available resources to preserve the parental relationship with [] Child.

- 11 -

3. [] Father took no steps to use the funds in his bank account to retain legal counsel to contest [the Order granting Paternal Grandmother sole physical and legal custody of Child].

4. Since at least July 2017, [] Father has not communicated with [] Child directly via telephone, mail, or any other means.

5. There is no evidence that [] Father sent [] [C]hild any presents or cards for Christmas 2017, or in celebration of [] [C]hild's first birthday in January 2018.

6. [] Father's single visit with [] Child is not sufficient to stop the six-month period from running under section 2511(a).  Since [] Father otherwise refused or failed to perform his parental duties for six months, the requirements of [section] 2511(a)(1) are met.

…

8. For approximately ten months, [] Father failed to fulfill his parental obligations to [] Child, and this lack of concern for [] Child is not negated by a singular visit. … [] Father has clearly not used the resources available to him to maintain a place of importance in [] Child's life.  Since August 2017, [] Father consistently has not maintained contact with [] Child, nor has he used the means available to him to attempt to overcome any obstacles impeding his relationship [] [Child].

…

11. With respect to Section 2511(a)(1), the [c]ourt, therefore, concludes that [] Father, by clear and convincing evidence of conduct continuing for a period of at least six months immediately proceedings the filing of the petition[,] evidenced a settled purpose of relinquishing his parental claim to [] Child and refused and failed to perform his parental duties.

Orphans' Court Order, 7/9/18, at 6-8; *see also* 1925(a) Opinion, 8/22/18, at

3-4 (emphasizing that Father only visited Child once within six months prior

to the filing of the ITPR Petition; Father had no contact with Child during the

period of time he was not in jail; and Father did not otherwise attempt to contact Child).

Additionally, the Orphans' Court considered the best interest of Child pursuant to subsection 2511(b), in relevant part, as follows:

27. The [c]ourt concludes that no bond exists between [] Father and Child; such bond may have begun formulating during the first six (6) months of [] Child's life, but it has been severed within the last year.

28. The [c]ourt specifically considered whether [] Child has developed a meaningful bond with [] Petitioners.

29. The [c]ourt concludes that, at this point, [] Child has established an emotional parent-child bond with Petitioners[,] who have provided stability, safety, and security, regularly and consistently, to [] Child over an extended period of time; that is, since early January 2018.

30. Based upon … the foregoing, the [c]ourt concludes that it is in the best interest of [] Child to terminate the parental rights of [] Father.

Orphans' Court Order, 7/19/18, at 13.

Our review discloses that the Orphans' Court's decision to terminate Father's parental rights under section 2511(a)(1) and (b) is supported by competent, clear and convincing evidence. *See In re Adoption of S.P.*, 47 A.3d at 826-27. We discern no abuse of discretion by the Orphans' Court in finding that no bond between Father and Child exists, and that Child has instead established a bond with Petitioners.

Based upon the foregoing, we affirm the Orphans' Court's termination of Father's parental rights to Child pursuant to subsections 2511(a)(1) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/16/2019